# Harrison, Harrison & Associates, Ltd.

90 BROAD STREET, 2nd Floor
NEW YORK, NY 10004
TEL. (718) 799-9111
FAX (718) 799-9171
jsalwen@nynjemploymentlaw.com

Address all mail to:
110 Highway 35, Suite 10
Red Bank, NJ 07701

February 12, 2021

**Via ECF**

Honorable Valerie E. Caproni
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:  *Pugo v. Soho Design NY LLC,* et al. -- Civ. No.: 19-cv-11792 (VEC)**

Dear Judge Caproni:

Pursuant to this Court's order on January 25, 2021 (ECF No. 31), the parties have removed those sections of the agreement that was submitted on January 19, 2021 (ECF No. 30) that were intended to resolve Plaintiff's New York City Human Rights Law claims and negotiated a new agreement that solely resolves Plaintiff's wage and hour claims in the above captioned action.  The Settlement Agreement ("Agreement," attached hereto as Exhibit A) no longer contains a confidentiality requirement.  Also, as ordered by the Court, under the terms of the Agreement, Plaintiff retains any other claims against Defendants and only releases his wage and hour claims.  The Parties respectfully request that the Court approve their Agreement and the settlement of Plaintiff's wage and hour claims as final, fair, reasonable, adequate, and binding on the parties, and that the Court dismiss this litigation, with prejudice, while retaining jurisdiction over the implementation of the Agreement.

The terms of the Agreement provide that in exchange for Plaintiff discontinuing this litigation and executing a release of his wage and hour claims in favor of Defendants, Defendants shall pay Plaintiff a total of twenty-one thousand four hundred seventy-five Dollars ($21,475.00) (the "Settlement Amount"), inclusive of attorney's fees and disbursements.  This Agreement was achieved after arm's length negotiations, conducted over a period of many months, and reflects a compromise between Plaintiff and Defendants.

While Plaintiff possibly could have received more money had he proceeded to and won at trial, Plaintiff agreed to the Settlement Amount, and believes it to be a fair and reasonable compromise.  In addition to receiving his money much sooner, and not having to wait months or

years, the Settlement Amount is more than the amount of Plaintiff's alleged, estimated unpaid Fair Labor Standard Act ("FLSA") wages (estimated at $20,604.00) and approximately thirty-two percent (31.9%) of the alleged, estimated total unpaid wages (estimated at $67,344.00) that he could have recovered had he won at trial. (*See* Exhibit B showing Plaintiff's alleged unpaid FLSA and New York Labor Law ("NYLL") wages.) Furthermore, the Agreement provides a peaceful resolution of all of Plaintiff's wage and hour claims.

Under the Agreement, Plaintiff receives a total of $14,050.00 to compensate him for his unpaid wages and liquidated damages and $7,425.00 is allocated to pay his legal fees and costs. Although Plaintiff could possibly have won a total of $41,208.00 in combined, alleged unpaid FLSA wages and liquidated damages at trial, this amount is extremely speculative.

In addition to the inherent risks of litigation, there were other risks involved in continuing to trial. Defendants strongly dispute that Plaintiff is owed any unpaid wages and have time records that they allege prove that Plaintiff is not owed any additional compensation. Specifically, Defendants allege that their wage and hour records establish that Plaintiff was required to – and did – precisely record all hours worked during his employment, and that he was lawfully compensated for all hours worked. Defendants categorically deny that Plaintiff worked any unpaid hours either on or off the clock. Unlike Defendants, Plaintiff has no written record of his alleged unpaid hours because they were allegedly worked off-the-clock. Thus proving the existence and/or extent of these alleged unpaid overtime hours would have been challenging. Even if Plaintiff were able to prevail at trial, because Plaintiff anticipated difficulties in convincing witnesses to testify against Defendants – and because Defendants would be more likely to find current or former employees to back up their positions – the amount of any alleged overtime found to be owed might have been substantially less than his estimated alleged unpaid wages or the Settlement Amount.

Defendants operate a small business which always has limited funds, even when business is good. Now, during the pandemic, these funds are even more limited. As a result, even if Plaintiff won at trial, he could have faced challenges to collecting on any judgment obtained. Another factor that influenced Plaintiff's decision to settle this suit was that he wanted the Settlement Amount sooner, rather than having to wait many months or several years for a payment or possibly losing at trial and not receiving any payment. Plaintiff also wished to forego the uncertainties of litigation and the hassle and expense of proceeding through discovery, depositions, and trial. He also did not want to take time off from work for depositions, settlement conferences, and trial. Furthermore, discovery in this case would have been costly because Defendants' time records consist of thousands of paper records, which the parties would have had to review and enter into a computer manipulable format to enable calculations of the wages allegedly owed to Plaintiff. Plaintiff – and Defendants – thus believe that the Settlement Amount represents a fair and equitable compromise that allows them to proceed with their personal and work lives without the disruptions, inconveniences, and risks inherent in litigation.

## ATTORNEYS' FEES & COSTS

The costs in this case are limited to the filing fee of $400.00. This amount will be reimbursed to Plaintiff's attorneys, Harrison, Harrison & Associates, Ltd. From the remaining

$21,075.00, Plaintiff's attorneys will receive $7,025.00. This amount represents the one-third contingency that Plaintiff agreed to in his retainer agreement (a copy of which is attached hereto as Exhibit C). Courts in this circuit regularly approve one-third contingency fees in FLSA and NYLL cases. *See Santos v. E T & K Foods, Inc.,* No. 16-CIV-7107(DLI)(VMS), 2019 WL 2435857, at *9 (E.D.N.Y. Feb. 26, 2019) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit") (citing cases); *Sumba Lema v. LIC Evergreen Cleaners Inc.,* No. 19-CV-836 (WFK) (LB), 2019 WL 6312378, at *4 (E.D.N.Y. Nov. 8, 2019), report and recommendation adopted, No. 19-CV-836 (WFK) (LB), 2019 WL 6307412 (E.D.N.Y. Nov. 25, 2019) ("Courts in this district generally find 33% of the overall settlement, the one-third contingency fee arrangement, to be reasonable*") (citing cases); Fernandez v. Masterypro Grp.,* No. 18-CIV-4540 (HBP), 2019 WL 4412804, at *3 (S.D.N.Y. Sept. 16, 2019) (finding the "fee to be reasonable; contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Santiago v. Church Ave. Express Inc.*, No. 18-CV-1594(RJD)(LB), 2020 WL 1877968, at *4 (E.D.N.Y. Jan. 22, 2020) (finding "30% of the total settlement [to be] a reasonable and appropriate attorney's fee award"); *Aly v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-4230 (FB)(LB), 2019 WL 3388947, at *5 (E.D.N.Y. June 13, 2019), report and recommendation adopted, No. 18-CV-4230 (FB) (LB), 2019 WL 3388925 (E.D.N.Y. July 26, 2019) ("[P]laintiffs' attorney's fees in the amount of $10,000.00 should be approved as fair and reasonable in this case. This amount represents one-third of the proposed settlement."); *Shamsundar v. FCS Grp. LLC,* No. 18-CV-2514(KAM)(LB), 2019 WL 3716198, at *4 (E.D.N.Y. May 22, 2019) (finding plaintiff's counsel's fee award of one-third to be fair and reasonable – "'[A] one-third contingency fee is a commonly accepted fee in this Circuit.'") (quoting *Calle v. Elite Specialty Coatings, Inc.*, No. 12 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014)).

The $7,025 that Plaintiff seeks in attorneys' fees amounts to a *negative* multiplier of the lodestar. Under the lodestar method, Plaintiff's counsel invested 52.2 attorney hours[1] in this litigation, amounting to $20,835.00. This total lodestar amount is based on hourly rates of $350.00 for Julie Salwen and $500.00 for David Harrison. Both Julie Salwen and David Harrison are experienced wage and hour litigators. (*See* attorney time records, attached hereto as Exhibit D.)

David Harrison is the managing partner of Harrison, Harrison & Associates, Ltd. During his more than sixteen years of practice, Mr. Harrison has represented tens of thousands of employees, both individually and in class and collective actions. In particular, Mr. Harrison has litigated as primary or co-lead counsel, hundreds of wage and hour cases – in federal courts primarily in the Southern and Eastern Districts of New York but also in the District of New Jersey, in the District of Connecticut, in the Northern District of Illinois, and in the Central District of California, as well as in various New York State Courts including the Supreme Courts of New York, Queens, Kings, and Nassau Counties. Julie Salwen is Of Counsel to Harrison, Harrison & Associates, Ltd. Ms. Salwen has represented employees in their claims against their employers

---

[1] In Plaintiff's motion for approval dated January 19, 2021 (ECF No. 30), Plaintiff stated that the lodestar represented 41.8 hours of attorney time. However, the calculation did not include the time expended after January 13, 2021, which included the time spent drafting the motions for approval and reviewing the settlement agreement with Plaintiff, among other tasks.

for more than eleven years.  In particular, Ms. Salwen has also litigated wage and hour claims for thousands of employees, often together with Mr. Harrison.

In the past, numerous courts have approved fee applications by Harrison, Harrison & Associates with rates of $450 for Mr. Harrison and $350 for Ms. Salwen.  The Judges that accepted the hourly rates of $450.00 for Mr. Harrison and $350.00 for Julie Salwen include (i) United States District Judge Sidney H. Stein, in July of 2018 (*Sanchez* et. al*. v. JRR Contracting, Inc.,* et. al., Case No. 17-cv-09997-SHS), (ii) United States District Judge Alison J. Nathan, in May of 2018 (*Chavez v. Fusion Physical Therapy and Sports Wellness, P.C.,* et. al., Case No. 17-cv-08882-AJN), (iii) United States Magistrate Judge Sarah Netburn, in November of 2017 (*Payano et. al. v. Burberry Limited*, Case No. 1:15-cv-10178-SN), and iv United States District Judge Ronnie Abrams in January of 2019 (*Perez* et al *v. Isabella Geriatric Center, Inc.*, Case No. 13-cv-07453-RA).  Mr. Harrison recently raised his hourly rate in the Southern District of New York to $500 to more closely conform with his level of experience.[2]

In light of the above, Plaintiff respectfully requests that this Court approve the parties' Agreement and dismisses this case, with prejudice, while retaining jurisdiction over the implementation of the Agreement.

We thank the Court for its attention to this matter.

Respectfully submitted,<br>
/S/ JULIE SALWEN<br>
Julie Salwen

cc: All Counsel of Record (Via ECF)

---

[2] With an hourly rate of $450 for David Harrison and $350 for Julie Salwen, the lodestar is $19,980.00, which also represents a negative multiplier..  (*See* Exhibit E.)

# EXHIBIT A

## SETTLEMENT AGREEMENT, GENERAL RELEASE, AND WAIVER

This Settlement Agreement, General Release, and Waiver between Diego Pugo ("Employee"), on Employee's behalf and on behalf of Employee's heirs, executors, administrators, successors, and assigns, in their respective capacities as such (collectively, "Releasor"), and Soho Design NY LLC ("Employer"), Lazaro Jewelry LLC, Lazaro Inc., Lazaro Diaz, and Brad Longenecker (Employer, Lazaro Jewelry LLC, Lazaro Inc., Lazaro Diaz, and Brad Longenecker, collectively, the "Soho Parties") and Releasees (as defined in Paragraph 4 of this Agreement), is entered into between the foregoing parties with the following understandings:

**WHEREAS**, Employee was employed by Employer;

**WHEREAS**, Employee's employment with Employer ended, effective November 5, 2019 (the "Separation Date");

**WHEREAS**, on or about December 25, 2019, Employee commenced an action against the Soho Parties in the United States District Court for the Southern District of New York (Case 1:19-cv-11792-VEC) (the "Action," and the United States District Court for the Southern District of New York, the "Court");

**WHEREAS**, the Soho Parties deny having engaged in any wrongdoing, violation, or unlawful activity of any kind and, in particular, deny the allegations set forth in the Action; and

**WHEREAS**, Employee and the Soho Parties have, either directly or through representatives, engaged in substantial negotiation and now wish fully and finally to settle any and all disputes among them, actual or potential, through a release of claims against Releasees and the other promises contained herein.

**NOW, THEREFORE**, for good and valuable consideration, the sufficiency of which is hereby acknowledged, Employee and the Soho Parties (collectively, the "Parties" and each, a "Party") enter into this Settlement Agreement ("Agreement"), and agree as follows:

1.      <u>Recitals</u>.  The Parties acknowledge and agree that the Recitals set forth above are true and accurate and are incorporated herein by this reference.

2.      <u>Separation</u>.  Consistent with the foregoing Recitals, Employee's last day of employment with Employer was the Separation Date.  Employee acknowledges that, since the Separation Date, he has had and, by further operation of this Agreement, shall have, no further job duties or responsibilities as an employee of, or otherwise on behalf of, Employer or the Soho Parties.  Employee further understands and agrees that, since the Separation Date, he has not been and, by further operation of this Agreement, shall not be, authorized to incur any expenses, liabilities, or obligations on behalf of Employer or the Soho Parties or, under any circumstance, act as, or represent that he has the

authority to act as, an agent for Employer or the Soho Parties.

      3.    <u>Payment</u>.

      (a)    Employee hereby agrees that, in consideration of the promises and obligations of Employee set forth in this Agreement, including, but not limited to, the with-prejudice dismissal of the Action and the full and final release of the claims against the Soho Parties and Releasees as set forth in Paragraph 4 below, Employee will accept, on his behalf and on behalf of Releasor, the total gross amount of Twenty-One Thousand Four Hundred Seventy-Five Dollars ($21,475.00) (the "Payment"), to be allocated as follows:

      (i)    Employer shall pay to Employee a lump sum in the total net amount of Four Thousand Six Hundred Eighty-Three Dollars and Thirty-Three Cents ($4,683.33), to be reported on an IRS Form 1099 MISC. This sum shall be remitted by Employer to counsel for Employee in the form of a check made payable to "Diego Pugo," and represents payment in exchange for Employee's alleged liquidated damages and interest. This sum shall be sent to counsel for Employee within ten (10) days after the Effective Date.

      (ii)    Employer shall pay to Employee a lump sum in the total gross amount of Nine Thousand Three Hundred Sixty-Six Dollars and Sixty-Seven Cents ($9,366.67), to be reported on an IRS Form W-2, less any and all applicable taxes and withholdings. This sum shall be remitted by Employer to counsel for Employee in the form of a check made payable to "Diego Pugo," and shall be sent to counsel for Employee within sixty (60) days after the Effective Date of this Agreement (as defined herein), and represents payment in exchange for Employee's alleged unpaid wages.

      (iii)    Employer shall remit to counsel for Employee a lump sum in the total net amount of Seven Thousand Four Hundred and Twenty-Five Dollars ($7,425.00), to be reported on an IRS Form 1099 MISC. This sum shall be remitted by Employer to counsel for Employee in the form of a check made payable to "Harrison, Harrison & Associates, Ltd" and shall be sent to counsel for Employee within twenty (20) days after the Effective Date.

      (b)    In the event that any taxes are deemed due and owing with respect to any portion of the Payment reported by way of an IRS Form 1099 MISC, (i) Employee shall be solely responsible for the full payment of all such taxes, as well as any interest, penalties, and costs imposed in connection with such determination or imposed as a result of the failure to withhold any sums from the Payment, and (ii) Employee shall indemnify and hold harmless Releasees in connection with the payment or nonpayment of any taxes relating to the Payment including, but not limited to, the failure to withhold any sums from the Payment.

      (c)    Employee acknowledges that the Payment encompasses and satisfies in full any and all outstanding compensation of any kind which may be due to Employee, including, without limitation, hourly wages, overtime wages, spread of hours payments,

commissions, bonuses, equity-related compensation, compensation for accrued or earned paid time off, compensation for accrued or earned vacation time, compensation for accrued or earned sick time, damages, and other forms or categories of compensation, whether arising under the Fair Labor Standards Act, the New York Labor Law, and/or any other federal, state, or local statutes, orders, laws, ordinances, regulations, or the like, or case law, regarding the payment of wages to employees.   As such, Employee acknowledges that the Payment constitutes payment in full in connection with, and thereby extinguishes, any of Releasor's existing or potential claims under the Fair Labor Standards Act and the New York Labor Law, including, without limitation, claims asserted in the Action and claims for all unpaid wages and compensation, retaliation, liquidated damages, and attorneys' fees.  Employee further acknowledges and agrees that (i) the Payment is adequate consideration for all of the terms of this Agreement; and (ii) any monetary or other benefits other than the Payment which, prior to the execution of this Agreement, Employee may have earned or accrued or to which Employee may have been entitled, have been paid, or such payments or benefits have been released, waived, or settled by Releasor pursuant to this Agreement.

    4.    <u>Release and Waiver of Claims</u>.

**THIS PARAGRAPH PROVIDES A RELEASE AND WAIVER OF CLAIMS EMPLOYEE MAY HAVE AGAINST EVERY PERSON AND ENTITY INCLUDED WITHIN THE DESCRIPTION BELOW OF "RELEASEES." BEFORE EMPLOYEE SIGNS THIS AGREEMENT, EMPLOYEE MUST READ THIS ENTIRE PARAGRAPH 4 CAREFULLY, AND MAKE SURE THAT EMPLOYEE UNDERSTANDS IT FULLY.**

(a)    In consideration of the Payment, Employee, on Employee's behalf and on behalf of Releasor, unconditionally releases the Soho Parties, both individually and collectively, as well as, in their respective capacities as such,  each of the Soho Parties' current and former owners, principals, founders, officers, directors, partners, executives, investors, advisors, parents, affiliates, subsidiaries, related entities, interested parties, consultants, agents, and employees (each, as applicable), and the heirs, executors, administrators, successors, and assigns of all of the foregoing, including, without limitation, Soho Design NY LLC, Lazaro Jewelry LLC, Lazaro Inc., Lazaro Diaz, and Brad Longenecker (collectively, "Releasees"), from or in connection with, and Employee hereby waives and/or settles, with prejudice, any and all wage and hour causes of action, suits, controversies, charges, liability, claims, or demands, known or unknown and which Employee ever had, now has, or shall or may have against Releasees as of the date of Employee's execution of this Agreement, which are set forth in, or relate in any manner to any and all allegations or claims set forth in, the Action.

(b) Employee expressly understands and acknowledges that it is possible that unknown losses or claims exist or that his claims set forth in the Action may have been underestimated in amount or severity, and Employee explicitly took that into account in determining the amount of consideration to be paid for the giving of this Agreement, and a portion of said consideration and the mutual covenants were given in exchange for a full satisfaction and discharge of such wage and hour claims.

5.   <u>Covenant Not to Sue</u>.

(a)   Employee represents and warrants that, other than the Action, which is rendered null, void, and dismissed with prejudice upon Court approval of this Agreement, Employee has not filed or commenced any complaints, claims, actions, or proceedings of any kind against any of the Releasees with any federal, state, or local court or any administrative, regulatory, or arbitration agency or body related to any of the claims released in Paragraph 4 hereof.   Employee acknowledges that, in the event such complaints, claims, actions, or proceedings have been filed, this Agreement shall render them null, void, and dismissed with prejudice, and Employee hereby expressly waives his right to pursue them in any manner.   To the fullest extent permitted by law, Employee agrees not to commence, maintain, or prosecute any action or proceeding in any court, agency, or other forum against the Soho Parties or any Releasees with respect to any claims released in Paragraph 4 hereof up to and including the date on which Employee shall have executed this Agreement.

(b)   Notwithstanding the foregoing provisions of this Paragraph 5, this Agreement shall not, and is not intended to, operate to preclude Employee from filing any claims before government agencies, which claims may not, under applicable law, be waived or released by way of this Agreement.   However, in the event that any government agency seeks to obtain any relief on behalf of Employee with regard to any claim released and waived herein, Employee covenants not to accept, recover, or receive any monetary relief or award that may arise out of or in connection with any such proceeding.

(c)   No later than seven (7) days after receipt of the total amount of the Payment in accordance with Paragraph 3 hereof, Employee shall take any and all steps which may be necessary to effect and accomplish the with-prejudice dismissal of the Action.

6.   <u>Return of Soho Parties' Property</u>.   Employee represents and warrants that he is not in possession of any property or equipment of any kind owned by or otherwise belonging to the Soho Parties, including, but not limited to, keys, mobile communication devices, jewelry, merchandise, computer equipment, files, and documents (collectively, "Employer Property").   In the event that Employee discovers that he is, in fact, in possession of any such Employer Property, Employee shall return any and all such Employer Property to the Soho Parties (as prescribed in Paragraph 9 hereof) within two (2) days after such discovery.

7.   <u>Non-Admission</u>.

(a)   Employee acknowledges and agrees that Employee is not a "prevailing party" as that term may be construed, defined, or applied under any federal, state, local, or other statute, order, law, ordinance, regulation, or the like, or under case law.

Employee shall not suggest or represent to any person or entity, directly or otherwise, that he is, in any manner, a "prevailing party" in connection with any claims or allegations referenced in the Action.

(b)     Neither this Agreement, nor the Payment made hereunder, are intended to be, shall be construed as, or are an admission or concession by any of the Releasees of any wrongdoing or illegal or actionable acts or omissions, and each of the Releasees expressly deny that any of them engaged in any wrongdoing or illegal or actionable acts or omissions.

8.     Remedies.  The covenants, representations, and acknowledgments made by Releasor in this Agreement shall survive the execution of the Agreement and the delivery of the Payment.  In the event that Paragraph 4 of this Agreement is determined to be void or unenforceable, in whole or in part, Releasees shall be excused and released from any obligation to provide any part of the Payment, and Releasor shall be obligated to return to Employer any part of the Payment that has been paid, less the portion of the Payment described in Paragraph 3(a)(iii) hereof and less the amount of the taxes and other withholdings by which the portion of the Payment described in Paragraph 3(a)(ii) hereof was reduced.  In the event that (i) Releasor is adjudged by a court of competent jurisdiction to have made a material misstatement in any term, condition, covenant, representation, or acknowledgment in this Agreement, or (ii) Releasor is found by a court to have committed a breach of any material term, condition, or covenant in this Agreement, Releasor shall repay to Employer the entire Payment, less the portion of the Payment described in Paragraph 3(a)(iii) hereof and less the amount of the taxes and other withholdings by which the portion of the Payment described in Paragraph 3(a)(ii) hereof was reduced.  In the event that one of the Parties commits a material breach of this Agreement, as adjudged by a court of competent jurisdiction, the breaching Party shall, subject to applicable law, be responsible for paying to the non-breaching Party or Parties reasonable costs and expenses incurred in successfully enforcing the terms of this Agreement, as adjudged by a court, including reasonable attorneys' fees, in addition to the breaching Party or Parties being liable for any damages, as adjudged by a court of competent jurisdiction, including, but not limited to, liquidated damages, suffered or incurred by any of the non-breaching Party or Parties by reason of such misstatement or breach.  In any of said events, each Party further reserves the right to seek any and all remedies available under federal, state, local, or other law, and shall be entitled to obtain injunctive relief to prevent any further breach of the terms set forth herein.

9.     Notices.  Any notices or transmissions to be given hereunder by either Party to the other may be effected by (a) personal delivery in writing; (b) nationally-recognized overnight delivery service; or (c) electronic mail.  Notices shall be addressed to the Parties at the following addresses:

(a)     If to Soho Parties, to:

Brad Longenecker
77 Hudson Street #3211
Jersey City, NJ  07302

5

blongenecker105@gmail.com

*with a copy to:*

Brian Turoff, Esq.
Manatt, Phelps & Phillips, LLP
7 Times Square Tower
24th Floor
New York, New York 10036
bturoff@manatt.com

(b)      <u>If to Employee, to:</u>

Diego Pugo
C/O Julie Salwen, Esq.
Harrison, Harrison & Associates, Ltd.
110 Highway 35, Suite 10
Red Bank, NJ  07701
jsalwen@nynjemploymentlaw.com

Either Party hereto may, at any time, change its above-noted contact information by remitting to the other Party hereto, seven (7) days' written notice of such new address to be used for the purpose of this Agreement.

10.     <u>Entire Agreement, Amendment, and Choice of Law</u>.  This Agreement constitutes the sole and complete understanding and agreement between the Parties concerning the subject matter hereof.  Except to the extent explicitly set forth herein, this Agreement supersedes any previous agreements and/or understandings, whether formal or informal, and whether written or oral, between the Parties or between Employee and the Soho Parties regarding the subject matter hereof.  This Agreement may not be amended except in a writing signed by both Parties.  This Agreement shall in all respects be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws provisions.

11.     <u>Consent to Jurisdiction</u>.  Any legal suit, action or proceeding arising out of or based upon this Agreement may be instituted in the federal courts of the U.S. or the courts of the State of New York, in each case located within the State of New York, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.  Service of process, summons, notice or other document by mail to such Party's address set forth in Paragraph 9 herein shall be effective service of process for any suit, action, or other proceeding brought in any such court.  The Parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action, or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

12.   <u>Waiver of Jury Trial</u>.  Each Party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such Party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement.  Each Party to this Agreement certifies and acknowledges that (i) no representative of any other Party has represented, expressly or otherwise, that such other Party would not seek to enforce the foregoing waiver in the event of a legal action; (ii) such Party has considered the implications of this waiver; (iii) such Party makes this waiver voluntarily; and (iv) such Party has been induced to enter into this Agreement by, among other things, the mutual consideration described herein.

13.   <u>Successors</u>.  For the avoidance of doubt, and without limiting any other provision of this Agreement, the rights, remedies, and protections afforded to the Soho Parties hereunder, including the rights, remedies, and protections set forth in Paragraph 4 herein, shall inure to the benefit of the Soho Parties' current and former parents, subsidiaries, representatives, successors, and administrators, as applicable.

14.   <u>Severability</u>.  If any provision of this Agreement is declared or determined by any court to be illegal or invalid, that part shall be modified or excluded from this Agreement only to the extent required by law, but the validity of the remaining parts, terms, or provisions shall not be affected and shall continue in full force and effect.

15.   <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts.  The several executed counterparts shall be considered an original and shall be binding on the Parties.  Consistent with the provisions of Paragraph 9 hereof, the Parties agree that email executed copies of this Agreement, whether executed and transmitted via DocuSign, PDF, or otherwise, shall be deemed effective and enforceable as originals.

16.   <u>Employee Acknowledgments</u>.

(a)   Employee has carefully read and understands all of the terms of this Agreement, and agrees and acknowledges that such terms are fair and reasonable, and are not the result of any fraud, duress, coercion, pressure, or undue influence exercised by or on behalf of the Soho Parties or anyone acting on behalf of or in concert with the Soho Parties.  In particular, Employee understands the seriousness of, and consequences attendant to, breaching any term or provision of this Agreement.  Employee has agreed to, and has entered into, this Agreement and all of the terms hereof, knowingly, freely, and voluntarily.  In executing this Agreement, Employee is not relying on, and has not relied on, any representation or statement made by the Soho Parties or anyone acting on behalf of or in concert with the Soho Parties with regard to the subject matter, basis, or effect of the Agreement, other than as explicitly set forth herein.

(b)   Employee acknowledges and agrees that he was represented fairly and adequately by legal counsel of his choosing in connection with this matter and in entering into this Agreement.  In particular, Employee has consulted with, and has been advised and represented by, Harrison, Harrison & Associates, Ltd. in connection with, and prior

to executing, this Agreement. Consistent with the foregoing, Employee agrees and acknowledges that this Agreement and its terms are enforceable in their entirety.

(c)     Employee shall have seven (7) days from the date on which he shall have been presented with a copy of this Agreement to consider whether to sign this Agreement. Employee may unilaterally waive this seven (7) day period at his election. Employee's signature on this Agreement constitutes an express waiver of the seven (7) day period if affixed prior to the expiration of that period. The Parties agree that any revisions or modifications to the Agreement, whether material or immaterial, will not restart this time period. Employee further acknowledges that the foregoing period of time is a reasonable period of time within which to consider his rights and obligations under the Agreement.

18.     <u>Effective Date</u>. The Agreement shall become effective on the later of the date on which the Agreement shall have been approved by the Court and the first day on which all signatories hereto shall have duly executed the Agreement (such date, the "Effective Date").

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement, General Release, and Waiver.

**DIEGO PUGO**

Date: 2/12/2021

**SOHO DESIGN NY LLC**

By:_____          Date:_____

Name:_____

Title:_____

**LAZARO JEWELRY LLC**

By:_____          Date:_____

Name:_____

Title:_____

**LAZARO INC.**

By:_____          Date:_____

8

Name:_____

Title:_____

**LAZARO DIAZ**

_____          Date:_____

**BRAD LONGENECKER**

_____          Date:_____

Sign Envelope ID: 9F0.....

to executing, this Agreement.  Consistent with the foregoing, Employee agrees and acknowledges that this Agreement and its terms are enforceable in their entirety.

(c)    Employee shall have seven (7) days from the date on which he shall have been presented with a copy of this Agreement to consider whether to sign this Agreement.  Employee may unilaterally waive this seven (7) day period at his election. Employee's signature on this Agreement constitutes an express waiver of the seven (7) day period if affixed prior to the expiration of that period.  The Parties agree that any revisions or modifications to the Agreement, whether material or immaterial, will not restart this time period.  Employee further acknowledges that the foregoing period of time is a reasonable period of time within which to consider his rights and obligations under the Agreement.

18.    <u>Effective Date</u>. The Agreement shall become effective on the later of the date on which the Agreement shall have been approved by the Court and the first day on which all signatories hereto shall have duly executed the Agreement (such date, the "Effective Date").

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement, General Release, and Waiver.

**DIEGO PUGO**

By: _____    Date: 2/12/2021 _____
FFE9B46147F04FA...

**SOHO DESIGN NY LLC**

By: _____    Date: 2/12/2021 _____

Name: Lazaro Diaz _____

Title: President _____

**LAZARO JEWELRY LLC**

By: _____    Date: 2/12/2021 _____

Name: Lazaro Diaz _____

Title: President _____

**LAZARO INC.**

By: _____    Date: 2/12/2021 _____

DocuSign Envelope ID: 91055D5B-69E7-438F-9DEA-D61B15704C2F

Name: _Lazaro Diaz_

Title: _President_

**LAZARO DIAZ**

Date: _2|12|2021_

**BRAD LONGENECKER**

Date: _2/12/2021_

9

# EXHIBIT B

**HARRISON, HARRISON & ASSOCIATES, LTD.**
David Harrison, Esq.
dharrison@nynjemploymentlaw.com
Julie Salwen, Esq.
jsalwen@nynjemploymentlaw.com
65 Broadway, Suite 835
New York, NY  10006
(718) 799-9111 Phone
(718) 799-9171 Fax
*Attorneys for Plaintiff*

# *PUGO V. SOHO DESIGN NY LLC*  et al.

## WAGE AND HOUR

### *Fair Labor Standards Act Damages*

| Start Date | End Date | # of Weeks ** | Reg. Hourly Rate | OT Rate | Avg. Paid Hrs. per Week * | Avg. Regular Hrs.owed per Week | Avg. OT Hrs. Owed per Week ‡‡ | Wages Owed per Week | Wages Owed in Period |
|---|---|---|---|---|---|---|---|---|---|
| 12/26/2017 | 10/29/2018 | 43 | $16.00 | $24.00 | 40.00 | 0 | 9.50 | $228.00 | $9,804.00 |
| 10/30/2018 | 11/5/2019 | 50 | $16.000 | $24.00 | 41.00 | 0 | 9.00 | $216.00 | $10,800.00 |

| TOTAL FLSA WAGES OWED | $20,604.00 |
|---|---|

| FLSA LIQUIDATED DAMAGES | $20,604.00 |
|---|---|

| **TOTAL FLSA DAMAGES** | $41,208.00 |
|---|---|

### *New York Labor Law Damages*

| Start Date | End Date | # of Weeks ** | Reg. Hourly Rate | OT Rate | Avg. Paid Hrs. per Week * | Avg. Regular Hrs.owed per Week | Avg. OT Hrs. Owed per Week ‡‡ | Wages Owed per Week | Wages Owed |
|---|---|---|---|---|---|---|---|---|---|
| 12/25/2013 | 12/24/2017 | 205 | $16.00 | $24.00 | 40.00 | 0 | 9.50 | $228.00 | $46,740.00 |

| LIQUIDATED DAMAGES | $46,740.00 |
|---|---|

**TOTAL NYLL Wage and Hour Damages**                                                  $93,480.00

*Notice Violations*

NYLL § 195(3)                                                                         $5,000.00

**NYLL DAMAGES**                                                                      **$98,480.00**

**FLSA and NYLL UNPAID WAGES COMBINED**                                               **$67,344.00**

‡ Calculation of hours is an estimate at this time prior to Defendants' production of Mr. Pugo's time records and wage statements.

\* Mr. Pugo's wage statements show that he worked every week during 2014, 2015, and 2016.  During those years there were only a few weeks
  in which he did not work 40 hours per week.  Even during the weeks in which he did not work a full 40 hours,
  Mr. Pugo generally worked more than 35 hours.  Mr. Pugo is missing many of his wage statements from 2017 -2019.

\*\* To account for the few weeks each year during which Mr. Pugo worked fewer than 40 hours, five weeks (one week per year) has been
   subtracted from the total number of weeks during the time period 12/25/2013 -10/15/2018.
   Three weeks have been subtracted from the time period from 10/16/18-11/5/19.

‡‡ Each day, Mr. Pugo arrived on 47th Street  to buy supplies approximately three quarters of an hour to an hour before he arrived at the store.
   Mr. Lazaro told Mr. Pugo not to put that time on his time sheets.  Mr. Pugo also had to continue working for as long as an hour or more
   after he was told to clock out each day.  During the time period from 12/25/2013 -10/15/2018, Mr. Pugo always worked through his half hour lunch.

# EXHIBIT C

# HARRISONHARRISON&ASSOC., P.C.
## ATTORNEY RETAINER AGREEMENT

This confirms that you, the undersigned client (hereafter "Client"), have retained Harrison Harrison & Assoc., LTD. (hereafter "ATTORNEY") to represent you in connection with your claims of discrimination and wage and hour violations against your former employer, Soho Design NY LLC and related entities and/or individuals (hereafter "Defendant").

It is understood and agreed upon, by and between Client and ATTORNEY, as follows:

1.  ATTORNEY has accepted this engagement subject to investigation of the claim(s). If upon investigation of the claim(s) we discover that we cannot assist you in this matter, we will withdraw from your representation, and, if necessary, seek permission from a court to withdraw. This determination will be made as soon as reasonably possible.
2.  You will be reasonably available to confer with us, provide us with copies of all documents and information and disclose all facts and circumstances that we reasonably need to know to properly represent you in this matter. This includes informing ATTORNEY of any deadline set forth to you by a state or government administrative agency, such as the EEOC. Unless we specifically request otherwise, you agree to retain originals of any and all documents that you send to ATTORNEY.
3.  You will promptly return telephone calls and correspondence from our office, comply in filling out required forms, and assist us in meeting deadlines and locating witnesses, documents and evidence.
4.  You should never discuss the status of settlement negotiations with anyone, including anyone connected with Defendant, or your case may be prejudiced. This is because if the defendant wishes to settle your case the defendant will typically insist on confidentiality; and, if settlement information is made public the Defendant may be less willing (or unwilling) to settle.
5.  You will pay ATTORNEY $100.00 as a retainer to initiate ATTORNEY's representation of you. If there is a recovery, the retainer shall be subtracted from the amount that ATTORNEY is entitled to receive as set forth in paragraph 7.
6   ATTORNEY shall be entitled to reimbursement for all normal disbursements including, without limitation, expenses for court costs, photocopying, messengers, travel, computer assisted research, court reporters, transcripts, experts, witness fees, etc., as may be appropriate for this matter. Disbursements shall be paid within 14 days of the date they are billed. ATTORNEY will apply the retainer to cover the first $1,500 in disbursements.
7.  In consideration for ATTORNEY's representation in connection with this matter, ATTORNEY will receive, before deduction and reimbursement of costs and expenses, the greater of (a) one third (1/3) of the net proceeds, or (b) the full amount of any Attorneys' fees. For these purposes, "net proceeds" means the gross pre-tax recovery (including any award of Attorneys' fees and the value of any benefits received) less any unrecovered disbursements. The fee set forth in this Agreement is not set by law, but is negotiable between ATTORNEY and Client.
8.  No attorney's fees shall be charged for the Attorney(s) if there is no recovery.
9.  Client hereby authorizes ATTORNEY to take whatever investigative and procedural steps are necessary to prosecute this matter, including: hiring investigators, paralegals, experts or any other personnel on Client's behalf.
10. Client hereby authorizes ATTORNEY to associate any other Attorney in representing Client,

with the consent of Client, without additional costs to Client.

11. This matter shall not be settled without the consent of Client.

12. ATTORNEY <u>has not and cannot</u> guarantee that we will be able to obtain any particular result or success in this matter.

13. ATTORNEY shall <u>not</u> be required to file or respond to any appeal in this matter, nor to provide any services of collection, or otherwise, after settlement or judgment has been reached.

14. If a verdict, judgment, award or settlement is obtained in this matter, the undersigned client hereby gives power of Attorney, limited to the above matter, to ATTORNEY to sign Client's name to any and all releases, dismissals, forms, checks, drafts, and other papers and to deposit the proceeds into either of ATTORNEY's trust accounts, and to distribute the funds in accordance with this Attorney Retainer Agreement.

15. We will be readily available to represent your best interests, keep you informed about your case and answer any questions you have about the way your case is being handled. If Client disputes any portion of ATTORNEY's fee you may have the right to Fee Arbitration pursuant to Part 137 of 22 N.Y.C.R.R. Forms will be provided upon request.

16. If, without the consent of ATTORNEY, you settle this matter or retain another Attorney, this agreement shall nevertheless remain binding to the full extent of the law. We will seek Attorneys' fees and will apply an hourly rate of Three Hundred Fifty Dollars ($350.00) per hour, if based on quantum meruit, or will seek a proportionate share of the legal fees if legally permitted to do so. We will also seek all out-of-pocket costs incurred by ATTORNEY in connection with our representation of you until the time of the substitution of new counsel.

17. If, at any time during the investigation and preparation of this case, ATTORNEY decides there is insufficient merit in proceeding further, ATTORNEY may withdraw, with permission of a court when necessary, without any further obligation whatsoever by the Client or ATTORNEY.

18. You may terminate this Agreement at any time. If you terminate this Agreement prior to a resolution of this matter or if we withdraw for good cause, and you acquire a recovery by other means or representation, you understand we will have a right to request legal fees and reimbursement for any expenses.

## WAIVER OF POTENTIAL CONFLICT

19. Client understands that ATTORNEY represented Elisa Portillo with respect to her claims against Defendant. Client also understands the ATTORNEY may represent Elisa Portillo with regard to future disputes with Defendant. While ATTORNEY does not see a conflict at this time, ATTORNEY and Client have discussed the possibility that a conflict may emerge as representation continues. Client has determined that the benefits of representation outweigh the potential for a conflict and knowingly agrees to ATTORNEY's representation of Elisa Portillo in the future.

Client's Initial

## DUTY TO PRESERVE EVIDENCE

20. Client understands that as a party to a legal matter he/she has a duty to preserve documents and other types of evidence that may be in any way relevant to the legal matter, regardless

of whether a lawsuit has been filed yet or not. Client agrees to preserve all documents or other evidence in Client's possession that may be related to the case. Such evidence is not limited to paper documents; it includes electronic evidence such as EMAILS, COMPUTER RECORDS, TEXT MESSAGES, WHATSAPP MESSAGES, WEB PAGES, SOCIAL MEDIA POSTS, and VOICEMAILS, as well as tangible items such as PHOTOGRAPHS, THUMB DRIVES, COMPUTERS OF ANY TYPE, CELL PHONES, PD As, and any other type of device or medium that can store communications or information in any form. Client agrees not to alter, destroy, or get rid of any such evidence.

Client's Initial

I have read all of the above, and understand and agree to all of it.

I hereby acknowledge receipt of a copy of this Attorney Retainer Agreement.

Accepted by:

_____Diego Pugo_____          _____          12/12/19
Client Printed Name           Client Signature            Date

_____Julie Salwen_____        _____          12/12/19
Attorney Printed Name         Attorney Signature           Date
Harrison, Harrison & Assoc., LTD.

## STATEMENT OF CLIENT'S RIGHTS AND RESPONSIBILITIES

Your attorney is providing you with this document to inform you of what you, as a client, are entitled to by law or by custom. To help prevent any misunderstanding between you and your attorney please read this document carefully.

If you ever have any questions about these rights, or about the way your case is being handled, do not hesitate to ask your attorney. He or she should be readily available to represent your best interests and keep you informed about your case.

An attorney may not refuse to represent you on the basis of race, creed, color, sex, sexual orientation, age, national origin or disability.

You are entitled to an attorney who will be capable of handling your case; show you courtesy and consideration at all times; represent you zealously; and preserve your confidences and secrets that are revealed in the course of the relationship.

You are entitled to a written retainer agreement which must set forth, in plain language, the nature of the relationship and the details of the fee arrangement. At your request, and before you sign a retainer agreement, you are entitled to have your attorney clarify in writing any of its terms, or include additional provisions.

You are entitled to fully understand the proposed rates and retainer fee before you sign a retainer agreement, as in any other contract.

You may refuse to enter into any fee arrangement that you find unsatisfactory.

Your attorney may not request a fee that is contingent on the securing of a divorce or on the amount of money or property that may be obtained.

Your attorney may not request a retainer fee that is nonrefundable. That is, should you discharge your attorney, or should your attorney withdraw from the case, before the retainer is used up, he or she is entitled to be paid commensurate with the work performed on your case and any expenses, but must return the balance of the retainer to you. However, your attorney may enter into a minimum fee arrangement with you that provides for the payment of a specific amount below which the fee will not fall based upon the handling of the case to its conclusion.

You are entitled to know the approximate number of attorneys and other legal staff members who will be working on your case at any given time and what you will be charged for the services of each.

You are entitled to know in advance how you will be asked to pay legal fees and expenses, and how the retainer, if any, will be spent.

At your request, and after your attorney has had a reasonable opportunity to investigate your case, you are entitled to be given an estimate of approximate future costs of your case, which estimate shall be made in good faith but may be subject to change due to facts and circumstances affecting the case.

You are entitled to receive a written, itemized bill on a regular basis, at least every 60 days.

You are expected to review the itemized bills sent by counsel, and to raise any objections or errors in a timely manner. Time spent in discussions or explanation of bills will not be charged to you.

You are expected to be truthful in all discussions with your attorney, and to provide all relevant information and documentation to enable him or her to competently prepare your case.

You are entitled to be kept informed of the status of your case, and to be provided with copies of correspondence and documents prepared on your behalf or received from the court or your adversary.

You have the right to be present in court at the time that conferences are held.

You are entitled to make the ultimate decision on the objectives to be pursued in your case, and to make the final decision regarding the settlement of your case.

Your attorney's written retainer agreement must specify under what circumstances he or she might seek to withdraw as your attorney for nonpayment of legal fees. If an action or proceeding is pending, the court may give your attorney a "charging lien," which entitles your attorney to payment for services already rendered at the end of the case out of the proceeds of the final order or judgment.

You are under no legal obligation to sign a confession of judgment or promissory note, or to agree to a lien or mortgage on your home to cover legal fees. Your attorney's written retainer agreement must specify whether, and under what circumstances, such security may be requested. In no event may such security interest be obtained by your attorney without prior court approval and notice to your adversary. An attorney's security interest in the marital residence cannot be foreclosed against you.

You are entitled to have your attorney's best efforts exerted on your behalf, but no particular results can be guaranteed.

If you entrust money with an attorney for an escrow deposit in your case, the attorney must safeguard the escrow in a special bank account. You are entitled to a written escrow agreement, a written receipt, and a complete record concerning the escrow. When the terms of the escrow agreement have been performed, the attorney must promptly make payment of the escrow to all persons who are entitled to it.

In the event of a fee dispute, you may have the right to seek arbitration. Your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request.

Receipt Acknowledged:

Diego Pugo
Client Printed Name       Client Signature        12/12/19
                                               Date

Julie Salwen
Attorney Printed Name    Attorney Signature     12/12/19
Harrison, Harrison                                        Date

# EXHIBIT D

| Date | UserName | Activity/ Expense | Rate | Hours/ Quantity | Amount | Description |
|---|---|---|---|---|---|---|
| 1/4/2019 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. CL |
| 1/4/2019 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. CL |
| 1/22/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 1/23/2019 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. CL re: meeting |
| 2/5/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. CL |
| 2/8/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 2/14/2019 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. CL |
| 2/20/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 2/21/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 2/25/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 2/26/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 2/27/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 2/27/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 3/4/2019 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. CL re: meeting |
| 3/7/2019 | David Harrison | Consulting | 500 | 0.2 | $100.00 | conf. Fable re: timesheets |
| 3/12/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 9/6/2019 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. CL |
| 11/12/2019 | David Harrison | Consulting | 500 | 0.2 | $100.00 | conf. JS |
| 11/18/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 11/18/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | texts to CL |
| 11/18/2019 | David Harrison | Consulting | 500 | 0.2 | $100.00 | conf. JS |
| 11/20/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 11/20/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 11/20/2019 | David Harrison | Meeting | 500 | 0.2 | $100.00 | joined CL meeting w/ JS |
| 11/29/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 12/16/2019 | David Harrison | Consulting | 500 | 0.6 | $300.00 | conf. JS |
| 12/24/2019 | David Harrison | Review | 500 | 1 | $500.00 | revw'd complaint & summons & civil cvr. sheet & prepared for filing |
| 12/26/2019 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 12/26/2019 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | tel. CL |
| 12/26/2019 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | ecf emails, revw'd court issued summons, conf. FA re: service of S&C |

| 1/15/2020 | David Harrison | Phone Call | 500 | 0.2 | $100.00 | tel. Defs' atty, email JS re: same, revw'd docket |
|---|---|---|---|---|---|---|
| 1/15/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | emails from/to Defs' counsel, revw'd draft ltr. to Judge |
| 1/15/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | email |
| 1/15/2020 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 2/3/2020 | David Harrison | Review | 500 | 0.2 | $100.00 | revw'd motion for extension of time & order on same |
| 2/5/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | emails re: pre-mediation call, conf. JS re: same |
| 2/5/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | email from mediation office |
| 2/19/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | emails |
| 3/17/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | emails |
| 3/18/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | emails, conf. FA re: same |
| 4/2/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | emails |
| 5/8/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | conf. JS |
| 5/21/2020 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 6/9/2020 | David Harrison | Consulting | 500 | 0.1 | $50.00 | conf. JS |
| 6/17/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | conf. JS |
| 7/9/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | Conf. JS |
| 7/31/2020 | David Harrison | Consulting | 500 | 0.7 | $350.00 | Conf. JS re: Damages, mediation, negotiation strategy, issues in case |
| 7/31/2020 | David Harrison | Review | 500 | 0.2 | $100.00 | Revw'd damages spreadsheet, emails re: Same |
| 8/3/2020 | David Harrison | Edit | 500 | 0.5 | $250.00 | Edits to mediation statement, conf. JS re: Same |
| 8/3/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | Email |
| 8/5/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | Email |
| 8/5/2020 | David Harrison | Consulting | 500 | 0.6 | $300.00 | Conf. JS re: Mediation, Defs' counsel |
| 8/6/2020 | David Harrison | Correspondence | 500 | 0.4 | $200.00 | Emails from/to JS, Def, mediator |
| 8/25/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | Conf. JS |
| 10/12/2020 | David Harrison | Consulting | 500 | 0.3 | $150.00 | Conf. JS |
| 10/26/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | Conf. JS |
| 10/26/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | Email from mediation office |
| 10/26/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | Email Defs counsel |
| 10/27/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | Email |
| 10/28/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | Emails |
| 10/29/2020 | David Harrison | Consulting | 500 | 0.5 | $250.00 | Conf. JS |

| 10/30/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | Conf. JS |
|---|---|---|---|---|---|---|
| 11/2/2020 | David Harrison | Consulting | 500 | 0.3 | $150.00 | Conf. JS |
| 11/2/2020 | David Harrison | Correspondence | 500 | 0.1 | $50.00 | Email |
| 11/4/2020 | David Harrison | Consulting | 500 | 0.1 | $50.00 | Conf. JS |
| 11/5/2020 | David Harrison | Consulting | 500 | 0.3 | $150.00 | Conf. JS |
| 11/11/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | Emails |
| 11/16/2020 | David Harrison | Correspondence | 500 | 0.2 | $100.00 | Emails |
| 11/16/2020 | David Harrison | Phone Call | 500 | 0.1 | $50.00 | Tel. Defs' counsel |
| 11/16/2020 | David Harrison | Consulting | 500 | 0.7 | $350.00 | Conf. JS |
| 11/16/2020 | David Harrison | Consulting | 500 | 0.2 | $100.00 | Conf. JS |
| 11/16/2020 | David Harrison | Phone Call | 500 | 0.3 | $150.00 | Tel. Chris |
| 12/2/2020 | David Harrison | Consulting | 500 | 0.3 | $150.00 | Conf. JS |
| 1/18/2021 | David Harrison | Consulting | 500 | 0.2 | $100.00 | Conf. JS |
| 1/19/2021 | David Harrison | Consulting | 500 | 0.3 | $150.00 | Conf. JS re: Defs' email |
| 2/11/2021 | David Harrison | Consulting | 500 | 0.6 | $300.00 | Conf. JS re: Revisions to settlement agreement |
| 2/11/2021 | David Harrison | Edit | 500 | 0.3 | $150.00 | Edits to flsa agreement |
| 2/11/2021 | David Harrison | Correspondence | 500 | 0.3 | $150.00 | Emails from/to JS, defs' counsel |
| **Total for** | **David Harrison** | | | **17.1** | **$8,550.00** | |
| | | | | | | |
| 3/12/2019 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 7/1/2019 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email w/ DH |
| 7/1/2019 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl |
| 7/1/2019 | Julie Salwen | Research | 350 | 0.1 | $35.00 | marital privilege in NY |
| 11/20/2019 | Julie Salwen | Meeting | 350 | 0.5 | $175.00 | w/ cl re: claims, moving forward |
| 11/20/2019 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/27/2019 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl |
| 11/29/2019 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/30/2019 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl |
| 12/1/2019 | Julie Salwen | Meeting | 350 | 0.4 | $140.00 | on w/ cl re: claims |
| 12/12/2019 | Julie Salwen | Meeting | 350 | 0.2 | $70.00 | w/ cl |
| 12/13/2019 | Julie Salwen | Review | 350 | 0.2 | $70.00 | Answers to DOL questions |
| 12/19/2019 | Julie Salwen | Draft | 350 | 0.5 | $175.00 | complaint |
| 12/19/2019 | Julie Salwen | Correspondence | 350 | 0.4 | $140.00 | texts w/ cl re:  commission claim |
| 12/23/2019 | Julie Salwen | Draft | 350 | 1.2 | $420.00 | complaint |

| Date | Timekeeper | Task | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| 12/23/2019 | Julie Salwen | Review | 350 | 0.3 | $105.00 | Client's paystubs |
| 12/24/2019 | Julie Salwen | Draft | 350 | 2.9 | $1,015.00 | complaint |
| 1/15/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 1/20/2020 | Julie Salwen | Filing | 350 | 0.1 | $35.00 | Notice of appearance |
| 1/22/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email from opposing counsel |
| 1/24/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | emails w/ opposing counsel |
| 1/30/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | emails / opposing counsel and cl |
| 2/5/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 2/13/2020 | Julie Salwen | Meeting | 350 | 0.6 | $210.00 | Phone conference w/ mediator and opposing counsel |
| 2/13/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ opposing counsel |
| 2/18/2020 | Julie Salwen | Review | 350 | 0.1 | $35.00 | draft letter to court and email opposing counsel re: same |
| 2/19/2020 | Julie Salwen | Meeting | 350 | 0.4 | $140.00 | on phone w/ cl re: mediation |
| 2/19/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | |
| 3/1/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl. re: discovery |
| 3/1/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl. re: discovery |
| 3/6/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl re: discovery |
| 3/6/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl |
| 3/10/2020 | Julie Salwen | Meeting | 350 | 0.3 | $105.00 | w/ cl. re: discovery |
| 4/8/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | and emails w/ DH |
| 4/14/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | texts and email w/ cl. |
| 4/14/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | Phone cl. |
| 4/17/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | Call cl. |
| 4/20/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl re:  retaliation |
| 4/20/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts and email w/ cl. |
| 4/20/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | emails w/ reference checker |
| 5/21/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 5/26/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | emails to/from opposing counsel |
| 6/26/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | Text w/ Cl re: mediation |
| 7/31/2020 | Julie Salwen | Damages | 350 | 1.1 | $385.00 | Calculat damages for damages demand; consult w/ DH re: same |
| 7/31/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email damages demand to Ds |
| 8/3/2020 | Julie Salwen | Damages | 350 | 0.2 | $70.00 | Correct damages calculation |
| 8/3/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email corrected damages demand to Ds |

| 8/3/2020 | Julie Salwen | Draft | 350 | 2.4 | $840.00 | Mediation statement |
|---|---|---|---|---|---|---|
| 8/3/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email mediation statement to mediator |
| 9/18/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: scheduling |
| 10/2/2020 | Julie Salwen | Correspondence | 350 | 0.3 | $105.00 | email to opposing counsel re:  discovery, settlement |
| 10/5/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 10/9/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | text w/ cl |
| 10/9/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl re: update |
| 10/12/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: mediation |
| 10/26/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | Review email from mediation office and consult on email to opposing counsel w/ DH |
| 10/29/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ C. Katsimagles re: settlement |
| 10/29/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | w/ Dh pre- phone call w/ opposing counsel |
| 10/29/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement after phone call w/ opposing counsel |
| 10/30/2020 | Julie Salwen | Documentation | 350 | 0.1 | $35.00 | document call w/ C. Katsimagles on 10/29. |
| 10/30/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | w/ DH re: negotiation |
| 11/1/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | Phone message and text to cl |
| 11/2/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement |
| 11/2/2020 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | w/ cl re: settlement, Ds' offer |
| 11/2/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: settlement |
| 11/4/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/4/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ opposing counsel re: settlement |
| 11/5/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement |
| 11/6/2020 | Julie Salwen | Meeting | 350 | 0.5 | $175.00 | on phone w/ cl re: witnesses |
| 11/6/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | Texts w/ cl |
| 11/8/2020 | Julie Salwen | Meeting | 350 | 0.6 | $210.00 | on phone w/ cl re: potential witnesses, settlement |
| 11/9/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/10/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl re: discovery, settlement |
| 11/11/2020 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | calls w/ C. Katsimagles re: settlement, mediation |
| 11/11/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl re: discovery, settlement |
| 11/12/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ opposing counsel re: settlement |
| 11/12/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/12/2020 | Julie Salwen | Review | 350 | 0.1 | $35.00 | email to mediation office and from office. |
| 11/16/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | w/ DH re: his conversation w/ C. Katsimagles |

| Date | Name | Type | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| 11/16/2020 | Julie Salwen | Review | 350 | 0.2 | $70.00 | recorded doc from cl |
| 11/16/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl re: recorded doc |
| 11/18/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ C. Katsimagles re: settlement |
| 12/2/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ C. Katsimagles re: settlement |
| 12/2/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement |
| 12/2/2020 | Julie Salwen | Phone Call | 350 | 0.4 | $140.00 | w/ cl re: settlement negotiations |
| 12/2/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email to DH re: conversation w/ cl |
| 12/21/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | Text w/ cl  re: info for Agreement |
| 12/21/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email w/ C. Katsimagles re: info for Agreement |
| 12/22/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email to C. Katximagles re: settlement payment breakdown |
| 12/24/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to C. Katsimagles re: settlement agreement |
| 12/29/2020 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | w/ cl re: settlement |
| 1/5/2021 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 1/5/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl |
| 1/6/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl |
| 1/13/2021 | Julie Salwen | Edit | 350 | 1.2 | $420.00 | settlement agreement |
| 1/13/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email opposing counsel w/ edits to settlement agreement |
| 1/14/2021 | Julie Salwen | Edit | 350 | 0.6 | $210.00 | settlement agreement |
| 1/15/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ C. Katsimagles |
| 1/15/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email opposing counsel w/ edits to settlement agreement |
| 1/16/2021 | Julie Salwen | Draft | 350 | 0.3 | $105.00 | Letter to court requesting extension of time to file Cheeks motion |
| 1/18/2021 | Julie Salwen | Draft | 350 | 2.4 | $840.00 | Cheeks motion |
| 1/19/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email settlement agreement for execution to cl |
| 1/19/2021 | Julie Salwen | Review | 350 | 0.4 | $140.00 | and edit Cheeks motion based on opposing counsels edits |
| 1/19/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | texts w/ cl re: settlement agreement |
| 1/19/2021 | Julie Salwen | Meeting | 350 | 0.5 | $175.00 | on phone re: settlement agreement |
| 1/19/2021 | Julie Salwen | Review | 350 | 0.3 | $105.00 | Ds' edits to settlement agreement |
| 1/20/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl |
| 1/22/2021 | Julie Salwen | Draft | 350 | 0.4 | $140.00 | email to cl re: settlement agreement |

| 1/25/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email w/ opposing counsel re: court order |
|---|---|---|---|---|---|---|
| 1/25/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | texts w/ cl re: court order |
| 1/25/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl re: court order |
| 1/26/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | emails w/ opposing counsel re: court order |
| 1/26/2021 | Julie Salwen | Phone Call | 350 | 0.4 | $140.00 | w/ cl re: court order |
| 1/29/2021 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | w/ C. Katsimagles re: court order on settlement agreement |
| 2/4/2021 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 2/5/2021 | Julie Salwen | Other | 350 | 0.6 | $210.00 | Calculate breakdown of FLSA and NYLL damages |
| 2/5/2021 | Julie Salwen | Correspondence | 350 | 0.3 | $105.00 | email to opposing counsel re: breakdown of settlement payments |
| 2/9/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: settlement agreement |
| 2/10/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: settlement agreement |
| 2/11/2021 | Julie Salwen | Correspondence | 350 | 0.4 | $140.00 | emails w/ opposing counsel re: Settlement Agreement |
| 2/11/2021 | Julie Salwen | Consulting | 350 | 0.6 | $210.00 | w/ DH re: Settlement Agreement |
| 2/11/2021 | Julie Salwen | Review | 350 | 0.2 | $70.00 | Draft of Settlement Agreement |
| **Total for** | **Julie Salwen** | | | **35.1** | **$12,285.00** | |
| | | | | | | |
| **TOTAL** | | | | **52.2** | **$20,835.00** | |

| Date | UserName | Activity/ Expense | Rate | Hours/ Quantity | Amount | Description |
|---|---|---|---|---|---|---|
| 1/4/2019 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. CL |
| 1/4/2019 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. CL |
| 1/22/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 1/23/2019 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. CL re: meeting |
| 2/5/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. CL |
| 2/8/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 2/14/2019 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. CL |
| 2/20/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 2/21/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 2/25/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 2/26/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 2/27/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 2/27/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 3/4/2019 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. CL re: meeting |
| 3/7/2019 | David Harrison | Consulting | 450 | 0.2 | $90.00 | conf. Fable re: timesheets |
| 3/12/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 9/6/2019 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. CL |
| 11/12/2019 | David Harrison | Consulting | 450 | 0.2 | $90.00 | conf. JS |
| 11/18/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 11/18/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | texts to CL |
| 11/18/2019 | David Harrison | Consulting | 450 | 0.2 | $90.00 | conf. JS |
| 11/20/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 11/20/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 11/20/2019 | David Harrison | Meeting | 450 | 0.2 | $90.00 | joined CL meeting w/ JS |
| 11/29/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 12/16/2019 | David Harrison | Consulting | 450 | 0.6 | $270.00 | conf. JS |
| 12/24/2019 | David Harrison | Review | 450 | 1 | $450.00 | revw'd complaint & summons & civil cvr. sheet & prepared for filing |
| 12/26/2019 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 12/26/2019 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | tel. CL |
| 12/26/2019 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | ecf emails, revw'd court issued summons, conf. FA re: service of S&C |

| Date | Name | Type | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| 1/15/2020 | David Harrison | Phone Call | 450 | 0.2 | $90.00 | tel. Defs' atty, email JS re: same, revw'd docket |
| 1/15/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | emails from/to Defs' counsel, revw'd draft ltr. to Judge |
| 1/15/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | email |
| 1/15/2020 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 2/3/2020 | David Harrison | Review | 450 | 0.2 | $90.00 | revw'd motion for extension of time & order on same |
| 2/5/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | emails re: pre-mediation call, conf. JS re: same |
| 2/5/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | email from mediation office |
| 2/19/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | emails |
| 3/17/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | emails |
| 3/18/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | emails, conf. FA re: same |
| 4/2/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | emails |
| 5/8/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | conf. JS |
| 5/21/2020 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 6/9/2020 | David Harrison | Consulting | 450 | 0.1 | $45.00 | conf. JS |
| 6/17/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | conf. JS |
| 7/9/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | Conf. JS |
| 7/31/2020 | David Harrison | Consulting | 450 | 0.7 | $315.00 | Conf. JS re: Damages, mediation, negotiation strategy, issues in case |
| 7/31/2020 | David Harrison | Review | 450 | 0.2 | $90.00 | Revw'd damages spreadsheet, emails re: Same |
| 8/3/2020 | David Harrison | Edit | 450 | 0.5 | $225.00 | Edits to mediation statement, conf. JS re: Same |
| 8/3/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | Email |
| 8/5/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | Email |
| 8/5/2020 | David Harrison | Consulting | 450 | 0.6 | $270.00 | Conf. JS re: Mediation, Defs' counsel |
| 8/6/2020 | David Harrison | Correspondence | 450 | 0.4 | $180.00 | Emails from/to JS, Def, mediator |
| 8/25/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | Conf. JS |
| 10/12/2020 | David Harrison | Consulting | 450 | 0.3 | $135.00 | Conf. JS |
| 10/26/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | Conf. JS |
| 10/26/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | Email from mediation office |
| 10/26/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | Email Defs counsel |
| 10/27/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | Email |
| 10/28/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | Emails |
| 10/29/2020 | David Harrison | Consulting | 450 | 0.5 | $225.00 | Conf. JS |

| 10/30/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | Conf. JS |
|---|---|---|---|---|---|---|
| 11/2/2020 | David Harrison | Consulting | 450 | 0.3 | $135.00 | Conf. JS |
| 11/2/2020 | David Harrison | Correspondence | 450 | 0.1 | $45.00 | Email |
| 11/4/2020 | David Harrison | Consulting | 450 | 0.1 | $45.00 | Conf. JS |
| 11/5/2020 | David Harrison | Consulting | 450 | 0.3 | $135.00 | Conf. JS |
| 11/11/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | Emails |
| 11/16/2020 | David Harrison | Correspondence | 450 | 0.2 | $90.00 | Emails |
| 11/16/2020 | David Harrison | Phone Call | 450 | 0.1 | $45.00 | Tel. Defs' counsel |
| 11/16/2020 | David Harrison | Consulting | 450 | 0.7 | $315.00 | Conf. JS |
| 11/16/2020 | David Harrison | Consulting | 450 | 0.2 | $90.00 | Conf. JS |
| 11/16/2020 | David Harrison | Phone Call | 450 | 0.3 | $135.00 | Tel. Chris |
| 12/2/2020 | David Harrison | Consulting | 450 | 0.3 | $135.00 | Conf. JS |
| 1/18/2021 | David Harrison | Consulting | 450 | 0.2 | $90.00 | Conf. JS |
| 1/19/2021 | David Harrison | Consulting | 450 | 0.3 | $135.00 | Conf. JS re: Defs' email |
| 2/11/2021 | David Harrison | Consulting | 450 | 0.6 | $270.00 | Conf. JS re: Revisions to settlement agreement |
| 2/11/2021 | David Harrison | Edit | 450 | 0.3 | $135.00 | Edits to flsa agreement |
| 2/11/2021 | David Harrison | Correspondence | 450 | 0.3 | $135.00 | Emails from/to JS, defs' counsel |
| **Total for** | **David Harrison** | | | **17.1** | **$7,695.00** | |
| | | | | | | |
| 3/12/2019 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 7/1/2019 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email w/ DH |
| 7/1/2019 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl |
| 7/1/2019 | Julie Salwen | Research | 350 | 0.1 | $35.00 | marital privilege in NY |
| 11/20/2019 | Julie Salwen | Meeting | 350 | 0.5 | $175.00 | w/ cl re: claims, moving forward |
| 11/20/2019 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/27/2019 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl |
| 11/29/2019 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/30/2019 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl |
| 12/1/2019 | Julie Salwen | Meeting | 350 | 0.4 | $140.00 | on w/ cl re: claims |
| 12/12/2019 | Julie Salwen | Meeting | 350 | 0.2 | $70.00 | w/ cl |
| 12/13/2019 | Julie Salwen | Review | 350 | 0.2 | $70.00 | Answers to DOL questions |
| 12/19/2019 | Julie Salwen | Draft | 350 | 0.5 | $175.00 | complaint |
| 12/19/2019 | Julie Salwen | Correspondence | 350 | 0.4 | $140.00 | texts w/ cl re:  commission claim |
| 12/23/2019 | Julie Salwen | Draft | 350 | 1.2 | $420.00 | complaint |

| 12/23/2019 | Julie Salwen | Review | 350 | 0.3 | $105.00 | Client's paystubs |
|---|---|---|---|---|---|---|
| 12/24/2019 | Julie Salwen | Draft | 350 | 2.9 | $1,015.00 | complaint |
| 1/15/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 1/20/2020 | Julie Salwen | Filing | 350 | 0.1 | $35.00 | Notice of appearance |
| 1/22/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email from opposing counsel |
| 1/24/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | emails w/ opposing counsel |
| 1/30/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | emails / opposing counsel and cl |
| 2/5/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 2/13/2020 | Julie Salwen | Meeting | 350 | 0.6 | $210.00 | Phone conference w/ mediator and opposing counsel |
| 2/13/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ opposing counsel |
| 2/18/2020 | Julie Salwen | Review | 350 | 0.1 | $35.00 | draft letter to court and email opposing counsel re: same |
| 2/19/2020 | Julie Salwen | Meeting | 350 | 0.4 | $140.00 | on phone w/ cl re: mediation |
| 2/19/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | |
| 3/1/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl. re: discovery |
| 3/1/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl. re: discovery |
| 3/6/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl re: discovery |
| 3/6/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl |
| 3/10/2020 | Julie Salwen | Meeting | 350 | 0.3 | $105.00 | w/ cl. re: discovery |
| 4/8/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | and emails w/ DH |
| 4/14/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | texts and email w/ cl. |
| 4/14/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | Phone cl. |
| 4/17/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | Call cl. |
| 4/20/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl re:  retaliation |
| 4/20/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts and email w/ cl. |
| 4/20/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | emails w/ reference checker |
| 5/21/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 5/26/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | emails to/from opposing counsel |
| 6/26/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | Text w/ Cl re: mediation |
| 7/31/2020 | Julie Salwen | Damages | 350 | 1.1 | $385.00 | Calculat damages for damages demand; consult w/ DH re: same |
| 7/31/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email damages demand to Ds |
| 8/3/2020 | Julie Salwen | Damages | 350 | 0.2 | $70.00 | Correct damages calculation |
| 8/3/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email corrected damages demand to Ds |

| Date | Name | Type | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| 8/3/2020 | Julie Salwen | Draft | 350 | 2.4 | $840.00 | Mediation statement |
| 8/3/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email mediation statement to mediator |
| 9/18/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: scheduling |
| 10/2/2020 | Julie Salwen | Correspondence | 350 | 0.3 | $105.00 | email to opposing counsel re:  discovery, settlement |
| 10/5/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 10/9/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | text w/ cl |
| 10/9/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl re: update |
| 10/12/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: mediation |
| 10/26/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | Review email from mediation office and consult on email to opposing counsel w/ DH |
| 10/29/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ C. Katsimagles re: settlement |
| 10/29/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | w/ Dh pre- phone call w/ opposing counsel |
| 10/29/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement after phone call w/ opposing counsel |
| 10/30/2020 | Julie Salwen | Documentation | 350 | 0.1 | $35.00 | document call w/ C. Katsimagles on 10/29. |
| 10/30/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | w/ DH re: negotiation |
| 11/1/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | Phone message and text to cl |
| 11/2/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement |
| 11/2/2020 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | w/ cl re: settlement, Ds' offer |
| 11/2/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: settlement |
| 11/4/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/4/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ opposing counsel re: settlement |
| 11/5/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement |
| 11/6/2020 | Julie Salwen | Meeting | 350 | 0.5 | $175.00 | on phone w/ cl re: witnesses |
| 11/6/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | Texts w/ cl |
| 11/8/2020 | Julie Salwen | Meeting | 350 | 0.6 | $210.00 | on phone w/ cl re: potential witnesses, settlement |
| 11/9/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/10/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl re: discovery, settlement |
| 11/11/2020 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | calls w/ C. Katsimagles re: settlement, mediation |
| 11/11/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ cl re: discovery, settlement |
| 11/12/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ opposing counsel re: settlement |
| 11/12/2020 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 11/12/2020 | Julie Salwen | Review | 350 | 0.1 | $35.00 | email to mediation office and from office. |
| 11/16/2020 | Julie Salwen | Consulting | 350 | 0.2 | $70.00 | w/ DH re: his conversation w/ C. Katsimagles |

| Date | Name | Task | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| 11/16/2020 | Julie Salwen | Review | 350 | 0.2 | $70.00 | recorded doc from cl |
| 11/16/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl re: recorded doc |
| 11/18/2020 | Julie Salwen | Phone Call | 350 | 0.2 | $70.00 | w/ C. Katsimagles re: settlement |
| 12/2/2020 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ C. Katsimagles re: settlement |
| 12/2/2020 | Julie Salwen | Consulting | 350 | 0.3 | $105.00 | w/ DH re: settlement |
| 12/2/2020 | Julie Salwen | Phone Call | 350 | 0.4 | $140.00 | w/ cl re: settlement negotiations |
| 12/2/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email to DH re: conversation w/ cl |
| 12/21/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | Text w/ cl  re: info for Agreement |
| 12/21/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email w/ C. Katsimagles re: info for Agreement |
| 12/22/2020 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email to C. Katximagles re: settlement payment breakdown |
| 12/24/2020 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to C. Katsimagles re: settlement agreement |
| 12/29/2020 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | w/ cl re: settlement |
| 1/5/2021 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 1/5/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | texts w/ cl |
| 1/6/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl |
| 1/13/2021 | Julie Salwen | Edit | 350 | 1.2 | $420.00 | settlement agreement |
| 1/13/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email opposing counsel w/ edits to settlement agreement |
| 1/14/2021 | Julie Salwen | Edit | 350 | 0.6 | $210.00 | settlement agreement |
| 1/15/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ C. Katsimagles |
| 1/15/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email opposing counsel w/ edits to settlement agreement |
| 1/16/2021 | Julie Salwen | Draft | 350 | 0.3 | $105.00 | Letter to court requesting extension of time to file Cheeks motion |
| 1/18/2021 | Julie Salwen | Draft | 350 | 2.4 | $840.00 | Cheeks motion |
| 1/19/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | email settlement agreement for execution to cl |
| 1/19/2021 | Julie Salwen | Review | 350 | 0.4 | $140.00 | and edit Cheeks motion based on opposing counsels edits |
| 1/19/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | texts w/ cl re: settlement agreement |
| 1/19/2021 | Julie Salwen | Meeting | 350 | 0.5 | $175.00 | on phone re: settlement agreement |
| 1/19/2021 | Julie Salwen | Review | 350 | 0.3 | $105.00 | Ds' edits to settlement agreement |
| 1/20/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl |
| 1/22/2021 | Julie Salwen | Draft | 350 | 0.4 | $140.00 | email to cl re: settlement agreement |

| 1/25/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email w/ opposing counsel re: court order |
|---|---|---|---|---|---|---|
| 1/25/2021 | Julie Salwen | Correspondence | 350 | 0.2 | $70.00 | texts w/ cl re: court order |
| 1/25/2021 | Julie Salwen | Phone Call | 350 | 0.1 | $35.00 | w/ cl re: court order |
| 1/26/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | emails w/ opposing counsel re: court order |
| 1/26/2021 | Julie Salwen | Phone Call | 350 | 0.4 | $140.00 | w/ cl re: court order |
| 1/29/2021 | Julie Salwen | Phone Call | 350 | 0.3 | $105.00 | w/ C. Katsimagles re: court order on settlement agreement |
| 2/4/2021 | Julie Salwen | Consulting | 350 | 0.1 | $35.00 | w/ DH |
| 2/5/2021 | Julie Salwen | Other | 350 | 0.6 | $210.00 | Calculate breakdown of FLSA and NYLL damages |
| 2/5/2021 | Julie Salwen | Correspondence | 350 | 0.3 | $105.00 | email to opposing counsel re: breakdown of settlement payments |
| 2/9/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: settlement agreement |
| 2/10/2021 | Julie Salwen | Correspondence | 350 | 0.1 | $35.00 | email to opposing counsel re: settlement agreement |
| 2/11/2021 | Julie Salwen | Correspondence | 350 | 0.4 | $140.00 | emails w/ opposing counsel re: Settlement Agreement |
| 2/11/2021 | Julie Salwen | Consulting | 350 | 0.6 | $210.00 | w/ DH re: Settlement Agreement |
| 2/11/2021 | Julie Salwen | Review | 350 | 0.2 | $70.00 | Draft of Settlement Agreement |
| **Total for** | **Julie Salwen** | | | **35.1** | **$12,285.00** | |
| | | | | | | |
| **TOTAL** | | | | **52.2** | **$19,980.00** | |